## Marsh's Appeal.

1. Partners cannot charge each other or the firm for their services without an express agreement, or one implied from the course of dealing between them.

2. Each partner must work to the extent of his ability for the whole, without regard to the services of his fellows or comparison of value.

3. Partners by writing entered "into partnership upon an equal footing," the capital to be furnished by two at six per cent. interest: there was no stipulation as to their respective duties. By *verbal* agreement one was to attend to the finances. He withdrew his services. *Held*, that on a settlement of the firm accounts, he was chargeable with the value of his services.

January 26th 1872.   Before THOMPSON, C. J., READ, AGNEW and WILLIAMS, JJ.   SHARSWOOD, J., at Nisi Prius.

Appeal from the decree of the Court of Common Pleas of *Union county :* In Equity, Of January Term 1871.

This was a bill by James S. Marsh, Joseph W. Shriner and Charles C. Sharkley, administrator, &c., of Frederick Marsh, against Samuel Geddes.   The bill was filed July 16th 1867, and was for the settlement of the partnership account of the late firm of Geddes, Marsh & Co.

The bill contained 15 paragraphs :—the only question brought up by the appeal arose on the 8th paragraph, viz. :—

"That the said defendant, in violation of his agreement as a member of said firm, neglected and refused to render service in the business of said firm from, on or about the first day of June, Anno Domini one thousand eight hundred and fifty-three, and fraudulently withdrew his services from business of said firm, which was a loss to the firm of the sum of one thousand dollars per annum, which sum is claimed to be charged against him, the said defendant."

The answer averred that the matters " complained of as being a violation, upon the part of the defendant, of his agreement as a member of said firm, and as a neglect and refusal to render services in the business of the said firm, are matters which, if true, may be tried and determined at law, and with respect to which the said complainants are not entitled to any relief from a court of equity,"—it denied the allegations of fact in the paragraph.

A replication having been put in, Andrew H. Dill, Esq., was appointed examiner and master.

He found and reported that the partnership was formed under the following agreement :—

" This article, made and concluded this 23d day of April, A. D. 1852, witnesseth : That Samuel Geddes, James S. Marsh, Joseph W. Shriner, Elisha C. Marsh and Frederick Marsh, hereby enter into partnership upon an equal footing, to carry on the foundry, and grain-drill and stove business, on the premises hitherto occu-

pied by Geddes & Marsh.    The style of the firm to be Geddes,
Marsh & Co.    The real estate and stock in trade of the firm of
Geddes, Marsh & Co. to be acquired and paid for as specified in
the following article of agreement (hereto annexed) between
Geddes & Marsh and Geddes, Marsh & Co.    The said Samuel
Geddes and James S. Marsh to furnish Geddes, Marsh & Co. all
the capital said firm may think necessary to carry on the business
of said firm, and to be allowed interest on all such advancements,
at the rate of six per cent. per annum.    This partnership to last for
the period of ten years, unless sooner dissolved by mutual consent.

"Some time afterwards, E. C. Marsh withdrew from the firm, and
about June 1853, Geddes ceased to participate actively in the
management of the business, and took no part in it till January
1858, when Frederick Marsh died, after which he was occasion-
ally present, up to September 1858, when the firm was formally
dissolved."

He further reported :—

* * * " The facts developed by the testimony are as follow :
That Samuel Geddes voluntarily withdrew from the partnership
at the time stated in the testimony, some four or five years,
and refused to render any service as a partner for the period
mentioned ; that his services would be worth one thousand dol-
lars a year at the least ; that there was a verbal understanding
among the partners at the time of the formation of the part-
nership, that each should take a particular department of the
business ; that Mr. Geddes was to manage the finances ; that he
was well qualified for this position, and was a careful and correct
business man, and was given that place on account of his fitness
for it, and that he performed this duty until he withdrew ; that a
loss was suffered by the firm during the absence of Mr. Geddes,
in the stove account of the firm against agents, for their sale,
amounting to some five thousand dollars, by reason of the inat-
tention of one of the partners who took Mr. Geddes's place ; that
to have dissolved the firm at the time of the withdrawal of Mr.
Geddes would have been at the risk of great loss in the then
condition of the business ; that the proof is sufficient to sustain
the amount charged by complainants for loss of service, if under
the law they are competent to make the charge.    It is not alleged
in the bill, nor do any of the witnesses prove that the with-
drawal of Geddes was done for the purpose of producing loss
and damage, or for the purpose of unfairly appropriating the
profits of the business to himself, nor does the evidence sustain
the charge that it was done for the purpose of engaging in
antagonistic business.    It is clear that Mr. Geddes withdrew
because of apprehension of loss in the completion of the fur-
nace, and subsequent irreconcilable personal differences between
the members of the firm.    Under the pleadings and the evidence,

[Marsh's Appeal.]

then, the question is, can a partner, under articles of association for a limited term of years, withdraw his services from the business of the firm, by reason of apprehension of loss and personal differences rendering intercourse unpleasant, and at the expiration of the time limited, on a settlement of partnership accounts claim a share of the funds without accounting to his copartners for the value of his services during his absence. This is the only allegation in the bill; there is no allegation that the withdrawal was a loss or damage other than the loss of personal service. * *

"As to the question of compensation, I understand the law to be, and so rule, that in the absence of express stipulation no such charge can be sustained. That if a partner fraudulently withdraws from a firm, occasioning loss of profits and damage, it may be possible he may be made responsible in equity in a proper case, and with sufficient allegations. * * * The bill in effect seeks to measure the value of the services rendered by the members to the firm, and to give some of them compensation for such service without any stipulation to that effect in the written agreement. The withdrawal of Geddes might have been sufficient cause for the dissolution of the partnership, and he might have been made responsible at law if the withdrawal had not been justifiable; but the other partners, in not adopting this course, cannot receive compensation for services rendered to the firm after the withdrawal, for what they did afterwards was no more than they agreed to do when the partnership was formed. * * * I refuse to allow the charge made for loss of services as partner."

Exceptions were filed to the report by the complainants: they were overruled by the court (Woods, P. J.), and a decree entered in accordance with the finding of the report.

The plaintiffs appealed to the Supreme Court and assigned the decree for error.

*G. F. Miller*, for appellants.—A partnership is to be regulated by the written articles so far as they go, but the partners will be bound by a verbal agreement: Casey on Part., 5 Law Lib. 3. Each partner must devote his attention and skill to the business of the firm: Parsons on Part. 6; 3 Kent's Com. 20. If losses occur by breach of duty by one partner, he must individually bear the loss: Id. 224; Caldwell *v.* Seiber, 7 Paige 494; Crawshay *v.* Collins, 15 Ves. 226. If a partner quits the business for an unreasonable cause he should make good the loss: Howell *v.* Harvey, 5 Arkansas R. 270. Bill in equity is the proper mode for settling partnership transactions: McFadden *v.* Hunt, 5 W. & S. 468; McFadden *v.* Sallada, 6 Barr 283.

*J. C. Bucher*, for appellee.—An extra allowance cannot be made to a partner for services unless by special agreement. Coll-

yer on Part., sect. 183; Story on Part., sects. 192, 198; Dougherty v. Van Nostrand, 1 Hoff. Ch. R. 68; Franklin v. Robinson, 1 Johns. Ch. 157; Burden v. Burden, 1 Ves. & Bea. 170; Bradford v. Kimberly, 3 Johns. Ch. 431; Lee v. Lashbrooke, 8 Dana 219; Paine v. Thacher, 25 Wendell 450; Newland v. Tate, 3 Ired. Eq. 232; Caldwell v. Lieber, 7 Paige 483; Phillips v. Turner, 2 Dev. & Bat. Eq. 123; Beatty v. Wray, 7 Harris 516; Brown v. McFarland, 5 Wright 129; Gyger's Appeal, 12 P. F. Smith 73.

The opinion of the court was delivered, July 3d 1872, by

WILLIAMS, J.—The only question in this case is, whether a partner who neglects and refuses, without reasonable cause, to perform the personal services which he has stipulated to render the partnership, is liable to account to the firm for the value of the services in the settlement of the partnership accounts. The master and the court below refused to charge the defendant with what would have been the value of his services to the firm if they had been rendered as agreed; because, in the absence of an express stipulation, partners are not entitled to compensation for their services, however unequal in value or amount; and to require the defendant to account for the value of his services would be, in effect, allowing compensation to the other members of the firm for the services they rendered. It is undoubtedly true, as a general rule, that partners are not entitled to charge each other, or the firm of which they are members, for their services in the copartnership business, unless there is a special agreement to that effect, or such agreement can be implied from the course of dealing between them. By the well-settled law of partnership, every partner is bound to work to the extent of his ability for the benefit of the whole, without regard to the services of his copartners, and without comparison of value; for services to the firm cannot, from their very nature, be estimated and equalized by compensation of differences: Beatty v. Wray, 7 Harris 519.

In the absence, therefore, of any special provision allowing compensation for services, the law will not make any, nor infer one from the greater industry or greater ability of any one partner. The doctrine seems to be that partners are considered as meeting on common ground, each engaged to do all he can for the common good; and whatever any one does, he has no claim for anything beyond his equal share of the common benefit without the consent of his copartners: Parsons on Partnership 229–30. The principle on which the master and the court below refused to charge the defendant is too firmly imbedded in the law of partnership to admit of question; but the doubt is as to its applicability to the facts of this case. The plaintiffs are not seeking compensation for the services they rendered the partnership. They are simply

seeking to charge the defendant with the loss occasioned the partnership by his refusal to render the services which he agreed to perform. If the partnership has suffered loss by his breach of the agreement, why should he not make good the loss, and put the firm in the same condition it would have been if he had not broken the agreement? If the defendant is compelled to make good the loss, each member of the firm, including himself, will receive his proportion of the amount in the distribution of the partnership assets, and in no just sense can this be regarded as compensation for the services individually rendered.

If, then, the value of the services is the measure of the loss, why should not the defendant be charged with their value? It may be that in the absence of any agreement to render the special services, he would not be chargeable for his neglect to perform them. The question is not whether one partner, in the absence of an express agreement, is entitled to compensation for the services he may render, or whether, if he fails to render any, he is liable to the partnership for the breach of the implied obligation to exercise diligence and skill, and to devote his services and labors for the promotion of the common benefit of the firm. But the question with which we have to deal is, whether a partner, who agrees to render special service to the firm, for the performance of which he is well qualified, and which was one of the inducements for the other members to enter the partnership, is liable to account for the value of such service, if he wrongfully refuses to perform it? If, says Mr. Justice Story, the partnership suffers any loss from the gross negligence, unskilfulness, fraud or wanton misconduct of any partner in the course of partnership business, he will ordinarily be responsible over to the other partners for all the losses and injuries, and damages sustained thereby, whether directly or through their own liability to third persons. Of course all losses, injuries and damages sustained by the partnership from the positive breach of the stipulations contained in the articles of partnership on the part of any partner, are to be borne exclusively by that partner, and he must respond over to the other therefor: Story's Partnership, § 169. If this be the law, why should not the defendant be answerable to the partnership for his breach of the agreement to perform the services stipulated?

The master has found upon competent and sufficient evidence that there was a verbal understanding among the partners, at the time of the formation of the partnership, that each should take a particular part of the business; that the defendant, Geddes, was to manage the finances; that he was a careful and correct business man, well qualified for the position, and was given that place on account of his fitness for it; and that he performed this duty until he withdrew his services; that to have dissolved the firm at that time would have been at the risk of great loss

in the then condition of the business; and that the proof is sufficient to sustain the amount charged by complainants for loss of service, if, under the law, they are competent to make the charge. But why should there be a doubt in regard to their right to charge the defendant with the amount of the loss? Why should not a partner be just as responsible for the breach of his agreement to render personal services to the partnership as for the breach of any other stipulation in the partnership contract? No good reason can be suggested why there should not be the same rule of accountability in the one case as in the other. It has been held that where, by the articles of copartnership, one partner is exempted from the duty of rendering his personal service to the joint business, if he afterwards does render such services, at the instance and request of his copartners, he will be entitled to a reasonable compensation therefor. The general rule that one partner cannot charge the firm for his services, is founded on the principle that each partner is bound to devote his skill and labor to the promotion of the common benefit of the concern, and is inapplicable where the reason of it fails: Lewis *v.* Moffit, 11 Ill. 392. And so it has been held that where partners agree to invest equal amounts of money in their common business, and one advances a larger sum than the other, he is entitled, upon settlement, to an allowance of interest on one-half of the excess so advanced by him from the date of its appropriation to the use of the firm: Reynolds *v.* Mardis, 17 Ala. 32. And why, by parity of principle, should not one partner be entitled, upon settlement of partnership accounts, to charge his copartner with the value of the services which he agreed to give and refused to render? If the defendant had made profit by engaging in other business in violation of his contract, it is settled that the plaintiffs would have their option, either to sue for damages for the breach of the contract, or to bring a bill in equity to compel an account: Moritz *v.* Perbles, 4 E. D. Smith 135. And it would seem to follow that they have the same option as it respects the remedy for the defendant's refusal, in violation of his contract, to render the services which he agreed to perform. The court below was, therefore, in error in not requiring the defendant to account to the partnership for the loss occasioned by his breach of the agreement. The proper measure of the damages, under the circumstances of the case, is the value of the services wrongfully withheld. The decree must, therefore, be set aside, and the record remitted to the Common Pleas, with instructions to charge the defendant in the settlement of the partnership accounts with the value of the services which he agreed and wrongfully refused to render, and to distribute the partnership funds to the partners entitled thereto, in accordance with the principles laid down in this opinion.

Decree accordingly.