JAMES CLARKE ET AL. v. SLATE V. R. CO.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS NO. 1 OF PHILADELPHIA COUNTY.

Argued April 3, 1890—Decided October 6, 1890.
[To be reported.]

1. In a suit by a partnership, the names of the partners should be stated on the record as descriptive, and to enable the court to take care of rights growing out of cross-demands, etc.; but the partnership is a distinct person in law, capable of holding property, contracting, suing and being sued, and the cause of action asserted must belong to the firm as such.

2. As a majority of the partners, while acting fairly and in good faith, and keeping within the scope and purposes of the partnership, have power to direct the course of the partnership affairs, they may give a valid warrant of attorney in the name of the firm, authorizing a suit upon a contract made by it, and this notwithstanding the dissent of a minority.

3. Ordinarily, it would be error, after the filing of such a warrant, to make absolute a rule for a sufficient warrant, and to stay the suit; but if it appear that the parties who gave the warrant have been divested of all interest in the firm, and that what was submitted by the parties and decided by the court was the effect of the divesting acts, such order was harmless and will not be disturbed.

Before STERRETT, GREEN, CLARK, McCOLLUM and MITCH-ELL, JJ.

No. 167 January Term 1890, Sup. Ct.; court below, No. 52 December Term 1886, C. P. No. 1.

On December 31, 1886, an action of covenant brought in the names of James Clarke, Terrence P. Smart and Francis P. Murray, trading as Clarke, Smart & Co., against the Slate Valley Railroad Company, was instituted by Mr. De Forrest Ballou, as the attorney of the plaintiffs. On February 28, 1887, the defendant obtained a rule on Mr. Ballou to file his warrant of attorney, and on March 2d, Mr. Ballou filed a warrant of attor-

ney, bearing date that day, purporting to be given by James
Clarke, Terrence P. Smart and Francis P. Murray, trading, etc.,
and signed thus :                    JAMES CLARKE    [Seal]
                                     F. P. MURRAY     [Seal]
                                     CLARKE, SMART & CO.

Thereupon, on application of the defendant, the court entered
a "rule on counsel for plaintiffs to file a sufficient warrant of
attorney; proceedings to stay." Under this rule, many depo-
sitions were taken, from which the following facts appeared :

Having formed a partnership, under the name of Clarke,
Smart & Co., for the purpose of taking a contract for the construc-
tion of the Slate Valley Railroad, Clarke, Smart and Murray,
on May 28, 1886, as partners and under the firm name afore-
said, entered into a construction contract with the defendant
company, upon which this action was brought. On August 11,
1886, all three partners executed an assignment, transferring
to Smart all moneys, stocks, bonds and other evidence of in-
debtedness, due or thereafter to become due to the firm of Clarke,
Smart & Co., under the contract with the railroad company.
Appended thereto was an agreement signed by Clarke, Smart
and Murray as individuals, bearing date the same day, which
recited an account stated between the parties upon which there
was found to be due to Smart the sum of $8,800, the assignment
aforesaid, and declared that the true intent and meaning of the
assignment was that Smart should apply the moneys, stocks and
bonds, to be received by him, to the payment of said sum with
interest, and, upon the payment thereof, should re-assign, to
the firm of Clarke, Smart & Co., the residue of the property so
assigned to him. This suit was afterwards instituted while the
assignment of the cause of action to Smart was standing uncan-
celed, and without his assent. He therefore refused to join in
executing the warrant of attorney filed, and the firm name was
signed thereto without his authority.

Some time after the date of the assignment, Clarke and Mur-
ray gave the railroad company a written notice in regard to it.
The testimony on their behalf tended to show that the substance
of the notice was that the company must not pay Smart more
than $8,800 in pursuance of the assignment, and Murray testi-
fied that he personally informed the secretary of the company
that the assignment was obtained fraudulently.

Statement of Facts.

During the pendency of the present rule, to wit, on May 17, 1887, Smart made a settlement with the railroad company of all matters relating to its contract with the partnership, receiving from it in the settlement certain moneys, stock and bonds. On May 20, 1887, Clarke and Murray filed a bill in equity against Smart, praying, inter alia, for an account of the partnership dealings, that the assignment above mentioned be declared void as having been obtained by fraudulent misrepresentations, and that Smart be ordered to deliver up the same for cancellation. The bill in equity was referred to a master, who took testimony thereunder, the pending rule in the present case being allowed to stand open in the meantime; and on July 12, 1889, the equity suit was settled by an agreement signed by all the parties which was as follows:

" And now, to wit, July 12, 1889, it is agreed by and between the parties hereto, that the above case shall be discontinued; that the defendant shall pay to De Forrest Ballou, attorney, as costs, counsel fees, and expenses of said litigation, the sum of three thousand four hundred and forty-six dollars.

" That in consideration of the payment of the sum of one dollar to each of us by said defendant, we, the said plaintiffs, release, and forever discharge the said defendant of and from all claims, demands, accounts, reckonings or right to account to us for or by reason of said copartnership, and of and from all claims and demands of every nature and kind whatsoever, heretofore existing between us, to the day of the date hereof.

" That the said defendant, for and in consideration of the sum of one dollar to him in hand paid by the said plaintiffs, hereby releases and forever discharges the said plaintiffs of and from all claims and demands for or by reason of said copartnership, or for or by reason of any other matter, cause or thing, whatsoever, heretofore existing between them to the day of the date hereof.

" That the discontinuance of the above case, and the execution of this instrument, shall not be deemed or taken as a ratification, on the part of the plaintiffs, of the assignment made by the plaintiffs to the defendant, dated the eleventh day of August A. D. 1886, nor on the part of the defendant as an admission of the allegations contained in said bill, touching the validity of the same.

" Witness our hands and seals the day and year aforesaid."

Attached to the foregoing settlement was the receipt of Mr. Ballou from Mr. Smart of "stock and bonds to the value of $3,446, in full for above."

Testimony for the defendant tended to show that the stock and bonds so receipted for by Mr. Ballou, were part of the same stock and bonds which Smart had received from the railroad company in the settlement made with it by him. There was also testimony for the defendant tending to show that on March 11, 1887, the interests of Clarke and Murray in the partnership of Clarke, Smart & Co., were sold at sheriff's sale to one Bertram Hughes.

The depositions taken having been filed and the rule for a sufficient warrant of attorney being called up for final disposition, the court on December 14, 1889, without opinion filed, made the rule absolute; whereupon the plaintiffs took this appeal, specifying that the court erred:

1. In making absolute the rule for a sufficient warrant of attorney.

*Mr. De Forrest Ballou,* for the appellants:

1. Any acts done by Smart which would relieve the defendant from the contract on which this suit is brought, are matters of defence which cannot properly be brought before the court in these proceedings. The only thing for determination here is, whether the warrant of attorney is executed by the proper parties and is sufficient. As to any defence to the contract, we are entitled to a day in court and to a jury trial. Each member of a partnership has the authority of a general agent as to everything within the general scope of the firm business: Kenney v. Altvater, 77 Pa. 34; Pahlma v. Taylor, 75 Ill. 629; Decker v. Howell, 42 Cal. 636; First N. Bank v. Carpenter, 41 Ia. 518; Cox v. Hickcan, 8 H. L. 268; Campbell v. Dent, 54 Mo. 325; Eastman v. Clark, 53 N. H. 276 (16 Am. Rep. 192); Davis v. Richardson, 45 Miss. 499 (7 Am. Rep. 732). Partnerships may sue in their capacity as such: 2 Bell's Com., 510; 5 Waite's Act. and Def., 146. Any partner has authority to use the firm name in bringing suits: Gay v. Waltman, 89 Pa. 453.

Arguments.

2. Unless the agreement of August 11, 1886, passed the interests of Clarke and Murray to such an extent as to amount to a dissolution of the partnership, the warrant of attorney filed is sufficient. That agreement was not understood to have, and according to its terms did not have, any such effect. The defendant company made the settlement with Smart, after full knowledge of the rights and duties of the several partners, and actual notice not to deal with Smart under this assignment. It therefore cannot insist upon his acts as binding upon the firm : Yeager v. Wallace, 57 Pa. 365 ; Batty v. McCundie, 3 C. & P. 202 ; Boardman v. Gore, 15 Mass. 339 ; Cargill v. Corley, 15 Mo. 425 ; Johnston v. Dutton, 27 Ala. 245 ; Dowd v. Sayward, 12 N. H. 271 ; Langan v. Hewett, 13 S. & M. 122 ; Dickinson v. Valpy, 10 B. & C. 128 ; Livingston v. Roosevelt, 4 Johns. 278 ; Clark v. Houghton, 12 Gray 38 ; Feigley v. Sponeberger, 5 W. & S. 564. Even if this had been an absolute assignment to Smart, it would not have taken from the other partners the right to sue for and apply debts due the partnership to the payment of its creditors. All partners are trustees for creditors to this extent.

*Mr. John G. Johnson* (with him *Mr. Charles Heebner* and *Mr. George R. Kaercher*), for the appellee :

1. A man has the right to determine for himself whether he shall embark as a plaintiff on a career of litigation, and, if he does so, who shall represent him as his attorney ; and the rule of law requiring the filing of a written warrant of attorney is a wise one. It is for the defendant's protection also. He has a right to know by what authority he is sued : Meyer v. Littell, 2 Pa. 181. It has even been held that equitable plaintiffs may be compelled to show their authority to use the name of a legal plaintiff : Mississippi R. Co. v. Railroad Ass'n, 8 Phila. 107. There is nothing in the partnership relation to make it an exception to the general rule. The law does not regard a firm as a distinct entity, but looks at the individual partners as the real parties : Gage v. Rollins, 10 Metc. 354. Partners have no power to appear for or represent each other in suits at law, or to compel each other to appear therein : Hills v. Ross, 3 Dall. 331 ; Phelps v. Brewer, 9 Cush. 390 ; Hall v. Lanning, 91 U. S. 166.

Opinion of the Court.

2. But there are special reasons, in this particular case, why the action of the court below should be affirmed. It is the right and duty of the court to protect parties by seeing that its process is not used for purposes of vexation and fraud: King of Spain v. Oliver, 2 Wash. C. C. 429. By their assignment to Smart, the plaintiffs, Clarke and Murray, vested the whole equitable right to sue in him, and gave him the right, if he did not have it before, to make a settlement with and give a release to the defendant. After he had made such a settlement, Clarke and Murray settled their equity suit against him, and received from him, with knowledge of their source, part of the stock and bonds which he received from the defendant upon the very contract they seek to sue on. They executed a release to him of all claims growing out of the partnership and that contract, with full knowledge of the fact that he had released the defendant. Their attempted action in this case is fraudulent.

OPINION, MR. JUSTICE WILLIAMS:

The firm in whose name this action is brought consists of three members, viz., Clarke, Smart, and Murray. The plaintiff's claim is on a contract for the construction of the defendant's road. After the service of the summons, the defendant ruled the plaintiffs' attorney to file his warrant. In compliance with this rule, he filed a warrant executed in the firm name and in the individual names of James Clarke and F. P. Murray. This the court decided to be insufficient as an authority for the use of the firm name, and stayed all further proceedings in the action. This ruling is the ground of the appeal, and the only question raised is over the right of De Forrest Ballou, Esq., to prosecute this action in the name of the firm, under the authority of the warrant of attorney which he has filed.

In considering this question, it is important to keep in mind that a partnership is created by the voluntary association of two or more persons for a common object, who severally contribute money or its equivalent to a common stock that is to be owned and used by the partnership for the common benefit. The partnership when formed is a distinct person in law. It has its own name, its own property, and a right to contract, to

sue and be sued, by its firm name. The names of the persons who compose the firm should be stated on the record as descriptive of it, and to enable the court to take care of the rights of the parties growing out of cross-demands and the like; but the cause of action asserted in the firm name must belong to the firm as such. Joint tenants and tenants in common have several titles to an undivided moiety. Their possession is in common because the share of one has not been separated from that of the others, but the title of each is to the property held in common, and is for a definite part of it. Partners have no title to the partnership property, for the title vests in the firm, and the interest of each member is a resulting interest, the value of which can only be ascertained by an account. Our question then is, not whether the warrant of attorney before us is that of all the individuals who compose the firm of Clarke, Smart & Co., but whether it is that of the firm.

This leads us to consider the manner in which the business of a firm must be conducted. The firm must have its origin in the mutual confidence reposed by the persons who comprise it in each other's skill, integrity, and capacity. Its members are bound by the nature of their compact to the exercise of good faith towards each other and the common enterprise for which they have united. Differences of opinion about questions of administration are to be anticipated. It would be unreasonable to expect that all the members of a partnership should see alike upon all questions, and for that reason a mere difference of opinion about the best thing to do, or the best way of doing it, does not necessarily work a dissolution, or send the business and assets of the firm to a receiver. It was the rule of the common law that the contract of partnership must be governed, like other agreements, by the principles of natural law and justice. It has accordingly been held that, where a firm consists of more than two persons, the majority, acting fairly and in good faith, may direct the conduct of its affairs as long as they keep within the purposes and scope of the partnership: 2 Bouvier's Inst., § 1454; Story on Part., § 123. In such case, the minority must yield, so long as the majority do not transcend or pervert the powers with which the firm has been invested. If the number of partners should in any given case be an even number and they should be

evenly divided in opinion, with no provision for such a contingency in their articles, then it may be that, as to that subject, the power of the firm to act is suspended so long as the even division continues; and, if the subject be one upon which action is essential to the purposes of the partnership, such disagreement might work a dissolution by rendering the further prosecution of the common enterprise impossible. The same consequences could not flow, however, from the dissent of a minority, because, within the purposes of the partnership and for the promotion of its interests, the majority have the right to control.

Our precise question does not seem to have been decided in this state, but light is thrown upon it by several cases in which the rights and duties of partners have been considered. Thus, in Marsh's App., 69 Pa. 35, it was held that a partner who refuses or neglects to perform the duties incumbent on him, as a member of the firm, may be compelled to make compensation to the firm for the value of the services so withheld. His reasons are not material. His liability springs from his contract obligation, and it would be no defence to allege that the firm had employed some person to whom he objected, or dismissed from its service some one whose retention he desired, or was employing a force which he objected to as too large or too small. The necessity for and the suitability of the persons employed, must be determined, if a difference of opinion exists, by the majority, and when a decision is reached it is binding on the firm. It has been held in many cases of which Purdy v. Powers, 6 Pa. 492, and Anshutz v. Fitzsimmons, 9 Pa. 180, are samples, that the act of one partner in appropriating partnership property to the payment of his individual debt does not bind the firm. What is still more, the firm may recover the money or the property from the person who thus received it, without regard to the bona fides of his conduct, or the wishes of the partner by whom the misapplication was made. The other members of the firm may consent to what has been done, but, if they do not, they may treat it as the illegal act of the minority which they are at liberty to disregard, and proceed in the name of the firm to recover the money or the goods that belonged to it. This could not be done, however, if the proceedings could be arrested because of the dissent of the partner

who made the misapplication. If he could arrest the action by saying: "I have not authorized this suit," then the firm and all its members would be absolutely under the power of one unfaithful partner, and the majority would be subjected to the arbitrary will of the minority. But the case is made no stronger, because the dissenting partner has misappropriated partnership property. The successful conduct of the firm business requires the use of the common stock for the common benefit. The direct appropriation of part of it by one of the partners to the payment of his own debts, is no greater violation of his own duty and no greater wrong to his firm, than the indirect appropriation of it by arresting the collection of the sums due from debtors who happened to be his friends. The successful administration of the partnership business requires the collection of the moneys due to it, the enforcement of its contracts, and the protection of its property, as truly as it requires the production and sale of its wares or the construction of the building, road, or other work which is the purpose of its formation.

The case of Hills v. Ross, 3 Dall. 331, is not in conflict with the rule we have laid down. It was there held that one partner, who was served, had no authority, by virtue of the partnership relation, to appear for a copartner not served. To do so was to subject him to the jurisdiction of a court into which he did not choose to come, and which had not reached him by the service of its process. The power of one partner to bind his copartners relates to acts properly done in the business of the firm. He may assert or defend the rights of his firm, and, in so doing, he represents it and acts in its stead; but, when he attempts to subject another member of the firm to the jurisdiction of the court by appearing for him, he acts as an individual, and, like any other individual attempting the same thing, he must show his authority, or his act will be held to be unauthorized. In the case now before us, two of the three members of the firm have brought an action in the firm name, upon a contract made by the firm, to collect what is alleged to be due upon it. Such conduct is within the power of the majority, because it is within the scope of the business of the firm, and in furtherance of it. A dissenting minority has no veto power in such a case, but is bound by the action of the majority.

Opinion of the Court.

The investigation in the court below, on the hearing of the rule, took a much wider range than the question raised required, and it would seem that the contest was over the right of the plaintiffs to recover on a full trial. It appeared by the evidence before the court that the firm of Clarke, Smart & Co. had assigned the contract on which the action was brought to T. P. Smart, at the beginning of their operations, and that he had subsequently settled with the Slate Valley Railroad Company for all work done under it, and given a receipt therefor in full. Clarke and Murray allege, on behalf of themselves and the firm, that this assignment was made to secure Smart for certain advances, and that the defendant was duly notified of its character before the settlement was made. By way of rejoinder, it is alleged on the other side that Clarke and Murray, after the settlement between Smart and the railroad company, and with full knowledge of it, settled the partnership affairs with him, received their share of the sum received by him, and released him from all liability to them growing out of the partnership of Clarke, Smart & Co., " or for or by reason of any other matter, cause, or thing whatsoever heretofore existing between them to the day of the date hereof." This date was August, 1889. The suit had been brought in 1886, and the order complained of was made in December, 1889. Upon this state of things, the right of the plaintiff to recover might naturally enough have been denied. In addition to this, the evidence shows a levy and sale by the sheriff of the interest of James Clarke and F. P. Murray in the firm of Clarke, Smart & Co., made in 1887, and the purchase of that interest by a creditor who still holds it. This apparently divested them of all interest in the firm or its property, and left them no ground on which to stand as its representatives. As both the release of 1889 and the sheriff's sale of 1887 were before the court, it seems possible that the action of the court may have been influenced by them ; but no opinion was filed or reasons given, and the course of the argument leads us to think that the only question legitimately raised, viz., the power of the majority to conduct the legitimate business of the firm in the firm name, and for that purpose to employ an attorney, was that on which the decision turned. If this be so the court was in error. If, on the other hand, the parties submitted and the court passed

Statement of Facts.

upon the effect of the sheriff's sale, and made the rule absolute for the reason that Hughes, the purchaser, now stood in the position that Clarke and Murray occupied when the suit was brought, we see no reason for disturbing the conclusion so arrived at. As no injustice was done by the order, as the case now appears in this court, and as there is reason to think that the question submitted and passed upon was that of the plaintiff's right to recover on the facts before the court, we are disposed to let the order stand, and it is accordingly

Affirmed.